Good morning, Your Honors. May it please the Court, Jonathan Edwards appearing on behalf of appellants James Edwards and David Edwards. I'd like to reserve two minutes for rebuttal. This is a case where the trial court refused to secure the appellant's rights by failing to provide a lawful arraignment. The trial court failed to read the charges into the record, failed to confirm that the appellant had a copy of the indictment, and finally entered pleas on their behalf without the presence of counsel and over their objections. The state court decision, and now appellee, seeks to paint appellants as unreasonable and as playing games with the court as a means to justify the trial court's actions while ignoring the unreasonable and unconstitutional nature of those actions. James Edwards, now 81 years old, and David Edwards, 55, have been suffering under an unconstitutional conviction since 2005 and now seeks this court's On May 19, 2004, the Santa Clara Superior Court arraigned the appellants without counsel and entered pleas on their behalf. David Edwards had been extradited to California 19 days prior to this hearing and James Edwards only five days. At the hearing, they both stated they desired to have counsel as none were present and objected to having the pleas entered on their behalf by the trial court. The state court denied the habeas relief, stating that there was no denial of And appellee, now for the first time, is required to respond as to how this decision was not contrary to federal law. The appellants never waived their right to counsel at arraignment, and were not asked to waive their right to counsel by the trial court. And neither the state court nor does appellee now argue that the appellants did waive their right to Sixth Amendment, uh, counsel. Counsel, I think, um, I'm not sure I'm tracking where you're going with this, so let me just make sure we clear the AEDPA hurdle right at the beginning. The order that we, um, had to send out. Your briefs never raised nor discussed the governing rule that we have to follow, which is the AEDPA rule. You argued it without reference to it. So we had to ask you to do that. Where have you raised the AEDPA argument in these proceedings? And when you didn't even attach to your exhibits the last, uh, reasoned opinion of the state court, that came in through the, uh, defendants. So why haven't, I'm at a loss to understand why you haven't waived this whole argument as to looking at this case through the lens of AEDPA. This is not de novo review we have up here. We're very constrained to determine whether there has been some statutorily, um, sanctioned failure of the state courts to either apply clearly established Supreme Court law or that they've unreasonably applied it. And that's not how you argue the case. Um, I refer the Court to, um, in the reply brief that, uh, was covered. Um, and the, uh, while it was an oversight, failed to attach the, uh, state court opinion to the, uh, additional excerpts of the record, it was attached to the, and argued at the district court level where it was unfortunately summarily dismissed, uh, I believe under the Strickland. And, uh, the, the Supreme Court, uh, the Supreme Court, uh, the Supreme Court found that the claim did not meet the standard of review under the Supreme Court. So your, the Superior Court decision was attached as part of your exhibits in the district court? The, yes. Did you argue the AEDPA standards to the district court? I believe it was. We're, I haven't seen a cite to that. Um, I can give you a citation to that. Well, maybe on rebuttal though. So you're saying that you argued, or were you the... Not me personally, no. Um, I, uh, was not assigned to counsel until, um, the, uh, appeal, uh, current appeal. Um, but that issue was raised before the district court. Um, it wasn't argued because it didn't get resolved on the merits because, uh, the district judge, uh, didn't, didn't, didn't necessarily dismiss the claim. Okay. So what do you, where do you, how do you think it was raised? Well, it was raised before the judge. He didn't... Explicitly raise that? Yes. I believe it was. Okay. Well, if you can, um, provide the cite. Where did you raise it before us? In, um, it was mentioned in the opening brief, albeit not explicitly. However, in the reply brief, that was, uh, explicitly referenced the ADPA standard and the failure of the State court to conform with Federal law. So your reference is in the reply brief. Yes, Your Honor. And where is it? In the reply brief? Yes, Your Honor. Where? Oh. Um, let's see if I can find it. If I can pull the exact reference. Uh, see, I don't, I don't have it exactly in front of me. I'll have to give it to you in rebuttal. Um... I'm looking at your reply brief. It's not cited. You cite California Penal Code, but there's no... You say it's discussed? Yes. All right. Contrary to clearly established Federal law? Yes. That's where you're arguing it? Yes. All right. Because, um, defense had a right, Sixth Amendment requires that they be provided with counsel at all critical stages, which arraignments are one, which is conceded by the appellee. However, their argument is not that this wasn't, that it was denied. They just sort of seem to skirt the Sixth Amendment and say, well, they didn't really genuinely have a desire for counsel, and so there was not a true denial. However, there's no authority to provide that subsequent conduct of a defendant can be used to retroactively find that no denial occurred. When, as in this case, appellants stated that they desired to have counsel, they were not providing counsel, and the trial could not be provided without counsel. So the State court, in this case, did not provide counsel, and the State court acknowledged that they needed to have counsel, as it was a complex case, and continued the case for identification of counsel, but then proceeded to enter the pleas on their behalf anyway. So how does AEDPA review apply to this case? Because we've got to look at this case through the view of the prism of AEDPA deference. Yes. Can you lay out your argument and analysis? Because for the State court to say that there was no denial is both against the clearly established Federal law in U.S. v. Wade, which requires that defendants be given counsel at the critical stage of arraignment, and U.S. v. Cronic, which requires that the complete denial of that right to counsel requires automatic reversal, not an affirmation, whereas the State courts found that it was okay that the trial court denied that right to counsel because the appellant's subsequent conduct evidenced gamesmanship, and therefore, I guess, they didn't deserve the right or they didn't genuinely desire it. However, the Supreme Court hasn't said that if there's a lack of a genuine desire that can be determined subsequently, that, therefore, allows the State court to or the trial court to deny the six-member right to counsel. And that would, in essence, require the trial court to be able to read the defendant's mind and see into the future to determine, you know, how could the trial court on May 19th have known that the State court subsequently would find that that denial was acceptable? And so you're raising a 2254d-1 argument? I think it's both, because it goes against the Supreme Court law that says that this requires automatic reversal, but it's also factually inaccurate to say there was no denial when there was no counsel present, they did not request a waiver, and no waiver was given. So it's factually unreasonable to determine there was a lack of – there was no denial when no counsel was present and there was no waiver, and they don't assert there was a waiver. Okay. Where did you argue that in your reply brief? I don't believe that was argued in the reply brief. Yes. And so that's the problem, counsel. You used the language in your heading of your reply argument, and it's contrary to established Federal law. Where did you draw that from? Where did that language, contrary to clearly established law, where did you find that phrasing? That's from the 2254d-1. And so why didn't you cite that? I believe it was cited. Well, it's not in your – I'm looking at your table of authorities, okay? I've been flipping through your reply brief. I see the heading. I don't see the D-1 citation. Am I missing it somewhere? I can – Okay. We're going to have to look at it. Yes. But now you're invoking D-2. So did you say that there was an incorrect factual finding? Well, it's – I know you did when we invited you and alerted you to it and laid it out for you in our order. But, you know, we – you're coming in at oral argument now and telling us with great passion, and I appreciate that. But it's very awkward for the Court to take your briefs, look at them, and try and figure out exactly which theory you have a winning case on. And if you lose on D-1, why are we supposed to go looking for some other ground that we can support your case on? My apologies for that, Your Honor. The factual – the unreasonable factual determination was discussed in the reply brief in discussing how the characterization used by the State court was taken from the – the direct opinion, which was referring to the claim that was raised at the direct opinion by the appointing attorneys was that there was a non-counsel at the Feretta hearing, which took place, I believe, on June – June 10th, I believe, a month subsequent to the arraignment hearing, and that was that court's determination. And the State court used that same determination to then say, well, therefore, this justifies no counsel being provided at an arraignment because they were playing games, they were delaying, they refused to accept counsel, when none of those events had taken place on May 19th. There had been no refusal to accept counsel. There had been no attempt to appoint counsel on that date. So it's factually impossible for the appellants to have done any of those things that that – that that decision was based on. But it seems more clearly that it's – that to say that there was no denial just is against the Sixth Amendment and against what the Supreme Court said in Wade and in Cronick and in Hamilton, that this is a – this is a critical stage where they are required to have counsel present or waive that right, and that was not done, and there was no counsel. And there's no question, based on the arraignment proceeding, which I believe was like six pages, that there was no counsel there, none was offered, none was waived, and the trial court just moved through in sort of a slipshod manner where they didn't read the charges into the record. There's the one point where he – he just says, in reference to whether the defendants had a copy of the indictment, he says, oh, I see you're holding something. Does that appear to be the indictment? Ah, so you received a copy, and he moves forward, doesn't wait for a response, doesn't wait to find out. If he says, oh, yes, I do have a copy, it – you know, it very much impugned all their rights. I think that decision to say that that was acceptable by the State court is – goes clearly contrary to everything the Supreme Court has said and everything that the Sixth Amendment stands for. Okay, counsel. I'm – I've gone through your reply brief. Your – your arguments are there that you're making now. So just as a matter of – I'm not sure what we're going to do with this, but just for your future performance and your future lawyering, because you're obviously very passionate about this and you've articulated  Thank you, Your Honor. But here you are on page 6 of your reply brief. You say, the warden argues that James Edward was arraigned with counsel, but points to nothing in the record to support this assertion. And then you cite to their brief, the May 19, 2004 hearing makes clear that he, in fact, had no counsel at this first appearance on the You don't label it as such. You don't cite the statute. I've done my search here as best I can and I won't swear to it, but 2254 doesn't come up in your briefing. So if you're going to make arguments and you're aware – and you're properly aware, our rules call for the standard of review. That's why it does. And there's a big difference in the federal system under AEDPA for us to review a case as if it's a direct appeal from a federal district court and where it's on habeas, where we owe substantial deference to the state courts. And if you've read the Supreme Court cases in California, you'll find that the Supreme Court monitors all the federal circuits, including us, very carefully on whether we are adhering to the strictures of AEDPA. And if you don't frame the argument for us in those terms, we have to decide on our own whether you even understand the concept that you're arguing. You've given a drive-by description of what a D2 claim could look like, perhaps, but you're not invoking it. So you're leaving it to us to interpret your brief and interpret it as if you have made the argument under the AEDPA standards. Do you understand the problem that we have? Yes, Your Honor. I apologize for the lack of clarity as far as referencing specifically the statutes in there to sort of guide the argument better. However, I do believe that the standard is met and that the Court can grant relief because of the fact that the statute is met. All right. I'm going to give you some time on rebuttal. Thank you, Your Honor. I'll give you a minute to respond. And you have a citation for me. I just do want to say one thing. No, don't give it to me now. Just give it on rebuttal, if you can. May it please the Court. Peggy Ruffray from the Attorney General's Office for Respondent. We do believe that the appellants failed to meet their burden of proof under AEDPA because they didn't reference it in their opening briefing. In fact, they indicated that the standard of review was de novo. There was no mention of 2254d at all in either the opening brief or the reply brief. But what effect does that have? Does that waive, then, all the arguments on the merits? Well, it means that they haven't met their burden of proof under AEDPA. The Court has to decide the case under the correct standard of review, which is AEDPA. But because they failed to address it, they failed to meet their burden of proof. Well, if they address all the elements, you know, the jurisprudence is on exhaustion. And if the petitioner has served up to the California courts all of the elements and then the court decides, the California court decides it and cites all the elements of a federal constitutional claim, we don't require the California courts to have actually cited and, you know, labeled, here's what we're doing. We're now deciding it with a federal object in mind. So now, in this case, I just read you what they said. Did you have any doubt that there's a 2254d-2 issue there, if there's a factual error, which it clearly is? Well, that's what we argued in our brief, but we didn't see their response in any of their briefs. Well, isn't he responding from what I just read? In the reply brief? Yes. Well, first of all, raising something for the first time in the reply brief isn't sufficient to bring it to the Court's attention in any event. But the only ADPA analysis I saw in the reply brief was simply the heading, where he said it was contrary to clearly established law, then there's no discussion whatsoever in the remaining brief about what the State court did. There's no discussion of the superior court order, which was the last reason decision. There's no discussion of the State court's expressed factual finding, which we relied under on. We believe this is – there are elements of D-1, but this is also definitely a D-2 case, and even an E-1 case, which is where there are expressed factual findings made. The trial court that had the defendants in front of them and had had quite a few interactions with them personally said, I find that you are engaging in gamesmanship with the court about the status of your representation in the context of finding that they were simply trying to delay the case. So that is an expressed factual finding that has to be presumed correct and wasn't rebutted. There's simply no discussion of any of these principles in any of the briefing. And again, of course, they said they thought it was de novo review. The problem is, is that what the court relied on for the gamesmanship was all post-arraignment conduct. So the issue is boiled down. At the arraignment, the court entered a plea, and then – and without their having counsel, and the law is a – that's a critical stage, and right to counsel is, on the 50th anniversary of Gideon v. Wainwright, is a – is a structural error. So if we were to reach it, wouldn't you agree we'd have some problems on the merits of the argument? No, Your Honor, because there was plenty of factual evidence before the court, even at the time of that May 19th hearing, that supported the conclusion that the defendants were simply trying to delay and were engaging in gamesmanship. And specifically, prior to that time, the court was aware that the appellants had been fighting extradition from Texas for the last 18 months. And the prosecutor informed the court of all of this. The court was aware that they had represented themselves during that extradition fight, but during that time, they weren't clear about whether they truly wanted counsel or not, and had used that same gamesmanship with the Texas courts. And then they had filed numerous pro se appeals all the way through the Texas state courts and the Texas district court. So the court was aware of that. The court was also aware of their unusual responses and unhelpful responses. The very first question the judge asked when they appeared was, is your name David Edwards? And he said, I'm not prepared to answer any questions. So they were recalcitrant from the very outset of the case. That was also with James Edwards. He also refused to answer what his name was. And then they claimed that they were seeking private counsel. This is, again, prior to the arraignment date. They claimed they were seeking private counsel, but they actually created these obviously insurmountable obstacles to ever getting private counsel. They had drawn up themselves this very unusually worded contract that required any attorney that would represent them to set aside their own professional interests. They had to agree that they would represent the defendants even above their own professional interests and the State bar. Kagan. But that was after arraignment, though, right, when that came to the court's attention, the unusual nature of the contract that they were asking. The court saw. Just a minute. Let me finish. That they were asking prospective attorneys to sign. The court saw the contract for the first time. I believe it was two appearances after the arraignment. But the court was also aware that they were refusing to wait time. So they were putting the court in this position where they were saying they wanted counsel, but they knew that no attorney was ever going to sign that contract. David Edwards admitted, this is at SCR 117, no attorney would agree to our contract. And what attorney would? Before the arraignment. He made that argument. Counsel. I'm sorry.  You're going to get plenty of time to answer. But you know, when counsel interrupt the court, you're going to go flying off, answering the wrong question, or at a minimum making us irritable. So please let us finish the question. It would be helpful if you clarify when you're citing all of this evidence of gamesmanship whether it is evidence that was known to the court at the time the court entered the plea without counsel. And everything I've described so far is what we assert was prior to the time of the plea. Except the contract, which the court hadn't seen. The court hadn't seen the actual contract until afterwards. At one point, he asked them to actually hand up the contract, and that was the first time that he saw the physical contract. And did he know the content of the contract, this unusual arrangement? I'm not sure if he knew the exact wording of it. Exactly. The court did know that they were refusing to waive time, even though any attorney that they might ultimately hire would need months to prepare for this case. The attorneys that were appointed at one time had indicated that they would need a minimum of four months to get prepared. The indictment itself was almost 1,700 pages long, and there were literally hundreds of thousands of pages of documents that were provided in discovery. So all of that was known to the trial court at the time of arraignment. Okay. I'm sorry to go back to this again, because I think you confused me a little bit. I want to make sure that I fully understand what was known to the trial court at the time that he entered the not guilty plea over their objection. So you said you marshaled your best facts together with regard to this because the court deemed that they basically didn't want counsel, and he entered the plea over their objection. So in terms of the reasonableness of that finding by the trial court, what are you relying on? You mentioned the fact that there was a history of fighting extradition, and they'd been very difficult and obstreperous, and that's my characterization. And so that was brought to his attention by the deputy district attorney, right? And then they refused to answer or answer to their name when they had their initial appearance. What else? Can you list all the facts that you know for certain that's reflected in the record as you stand here today that was known to the trial court at the time he entered that plea? Yes, Your Honor. And just to go back to the very first point I made about their history during the extradition proceedings, it wasn't simply that they had fought it for all that time, but they were using uncertainty about their representation status in order to delay during the extradition proceedings. So the court was aware of that. The court was aware of their unhelpful nature from the very outset of the case. And then the fact that they claimed they were seeking private counsel, but they wouldn't waive time. And the court was aware that this was a complex case that had literally hundreds of thousands of pages of discovery. The prosecutor had indicated that it was on a computer disk, it was so large. So the court was aware even before seeing the contract, the court was aware of the contract, but hadn't seen the actual contract that required the attorney to waive his own interest, which no attorney would ever agree to. But the court was aware that any attorney would have to have more time than a couple of weeks to prepare for this kind of case, because the discovery was so voluminous. And the court even indicated at some of these early appearances that it was unlikely that any attorney that they did eventually hire would be able to get prepared if they didn't waive time. So the court was aware that the defendants were creating this situation where, as the court said on June 2nd, something's got to give. And the court asked the appellants what they thought should happen at that point. And they had no other suggestion except simply to delay it again. So they delayed the case again and again and again until they finally waived counsel about six weeks out. I see my time is about up. I just wanted to make one other point, which is on the D1 point, the legal point. There is a right to counsel at arraignment, but that doesn't mean the defendant has the --"must have counsel even if they don't want one." And so then that ties into the D2 analysis here, which is that we believe it was clearly a reasonable interpretation of the facts. These facts known at the time of arraignment that I just outlined, in addition to all the facts, which I think the court was entitled to consider on review, to find that they were simply trying to delay and they did not, in fact, want counsel. And if that's the case, then there was no error at all, much less structural error. But the State court then found that there was no prejudice. So it implicitly found that if there was error, it was not structural. And we believe that was a reasonable interpretation, because this case is totally distinguishable from Hamilton v. Alabama. That's the Supreme Court case about the right to counsel at arraignment, where the defendant actually had an attorney and had been in court on another charge. Then he was charged with a capital crime, and they went ahead and arraigned him without his attorney present. So he clearly wanted counsel and even had counsel, but the court just went ahead anyway. That's nothing like the case that happened here, based on all of the circumstances that I've described. So it was reasonable for the superior court to say that there was no prejudice here. And I think the Supreme Court's opinion in Brecht, and Brecht says, in talking about harmless error analysis, which is the Federal standard, as you know, you say at the other end of the spectrum of constitutional errors lie structural defects in the constitution of the trial mechanism, which defy analysis by harmless error standards. The existence of such defects, deprivation of the right to counsel, for example, requires automatic reversal. But that's only where they want counsel. That's the point I'm trying to make. And if you have a State court factual finding that they didn't really want counsel, then it's not error to not have counsel. So first you have to say that the State court would have been unreasonable under all the facts that I've just described to say that in this particular case, under these rather unusual circumstances, they would have to say that it was completely unreasonable, objectively unreasonable for the State court to say that they didn't want counsel. I don't think they've met their burden to do that under the facts of this case. So the right to counsel doesn't exist in a vacuum. If you don't want counsel, then there's no reason for it. Kennedy. I thought you were just telling us that they were looking for counsel, and that was the reason that they were delaying things, that in order to, in this whole contract, it was about their going out to get counsel. So where does the we don't want counsel, what's that based on? They knew that they were not going to actually get any attorney to agree to represent them. They said they were trying to find retained counsel, but under the circumstances, no attorney would ever have signed that contract, and in fact, many refused. And so that's sorry, I interrupted, but so that's based on the post-arraignment information that the court is relying on to say, in fact, with that contract, it's now evident that they didn't want counsel. So that's the relevance of that post-arraignment evidence to show that the trial court. That's certainly part of it, yes. But even at the time of arraignment, the trial court, as I said before, knew that they weren't waiving time. They were refusing to waive time. Well, that's a different issue. That doesn't have anything to do with it. Well, no, it does, because the court knew that any attorney, if they did find an attorney, that any attorney would be. Is that what the court said, or is this what you're? I believe the court did say something along those lines, yes. All right. Well, we'll have to check the record on that. You're over time. All right. Thank you. We appreciate it. I would just like to say that they did desire counsel, but what wasn't noted was that while they were willing to be brought to trial, they didn't desire counsel. So they were trying to find counsel that understood those laws so that they could formulate a proper defense, which was that they weren't selling fake, fraudulent securities that did not exist. And that obviously, as the Court can understand, takes time. And I don't think that's the case. What is your response to counsel's argument that by the time of the arraignment where the trial court entered the not-guilty please, over their objection, the court was already aware of this history where, in an effort to fight extradition for 18 months, they were utilizing the counsel, lack of counsel status, as essentially a delaying tactic, and this was brought to the court's attention. That, coupled with not answering their names in court, coupled with the refusal to waive time, despite the fact that this was going to be an extremely complex case, that kind of certain factual findings were made in the trial court's mind. And when we review factual findings, again, it's through the deferential lens that the court thought that they were essentially rejecting counsel. Because didn't the court try to appoint legal aid to represent them, and they didn't want legal aid? And then the court tried to appoint legal aid to represent them, and they didn't want legal aid. And so they were not going to be able to get any legal aid. And the court, in its own view, decided that they were going to appoint legal aid in the indictment that had already been in the State and were represented. So it wasn't until June 16th that counsel was, for the first time, appointed to them by the court. Kennedy. Let's come back to the --"because we're running over time." Focus on what Judge Wynn asked in particular. I don't believe the State court entitled to deference on its finding of fact that your clients were gaming the system if one looks only at the pre-arraignment circumstances that Judge Wynn just summarized. They are entitled to deference. However, I don't believe that it's accurate to say that them fighting, being extradited to California, is somehow gaming the system. They were fighting extradition because of the law. That's up to the California court to decide, isn't it? Is it unreasonable for it to decide that? I think it's unreasonable to say that the exercise of rights in seeking to defeat a warrant that says that you need to be returned to California when you've never been to California is somehow a gamesmanship. Do you see the problem, counsel? You didn't focus on AEDPA when you argued your case, and now we're doing it all orally here in the courtroom. Okay. We have your position, and we appreciate the argument. Thank you. I'm sorry, you had a cite for me, counsel? I refuse to agree, but I believe you were correct that I might find the argument there, but the citation is not. All right. Thank you.
judges: Noonan, Fisher, Nguyen